UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC MASSEY                                                    CIVIL ACTION

VERSUS                                                          NO. 15-3701

N. BURL CAIN, WARDEN                                   SECTION: "A"(1)

REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

## I.    STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, Eric Massey, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On August 30, 2010, he was convicted of second degree murder under

Louisiana law.[1]  On September 9, 2010, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2]

On June 29, 2011, Massey appealed his conviction to the Louisiana Fifth Circuit Court of Appeal raising four claims:

1.      The trial court erred in denying the defense's <u>Batson</u> challenge;

2.      The trial court erred in failing to suppress evidence;

3.      The trial court erred in denying the motion to sever the defendants; and

4.      The evidence was insufficient to uphold the conviction.[3]

The court denied relief and affirmed Massey's conviction and sentence on March 27, 2012.[4]  Next, on April 24, 2012, he submitted a writ application with the Louisiana Supreme Court (Case No. 2012-KH-991) re-raising the same four claims.[5]  On September 21, 2012, the Louisiana Supreme Court likewise denied his writ.[6]

On or about November 25, 2013, Massey filed an initial application for post-conviction relief with the state district court raising four claims[7] and on December 25, 2013, he filed a

---

[1] State Rec., Vol. 8 of 11, transcript of August 30, 2010, p. 212; State Rec., Vol. 1 of 11, minute entry dated August 30, 2010; State Rec., Vol. 1 of 11, jury verdict form.

[2] State Rec., Vol. 8 of 11, transcript of September 9, 2010; State Rec., Vol. 1 of 11, minute entry dated September 9, 2010.

[3] State Rec., Vol. 8 of 11; Rec. Doc. 1-2, p. 5.

[4] <u>State v. Massey</u>, 91 So. 3d 453 (La. App. 5th Cir. 2012); State Rec., Vols. 1-2 of 11.

[5] State Rec. Vol. 11 of 11; Rec. Doc. 1-2, p. 33.

[6] <u>State <i>ex rel.</i> Massey v. State</u>, 98 So.3d 332 (La. 2012); State Rec., Vol. 11 of 11; Rec. Doc. 1-3, p. 3.

[7] State Rec., Vol. 2 of 11, (Application for Post-Conviction Relief); Rec. Doc. 1-3.  The claims that Massey raised in his initial application were: 1. Sufficiency of the evidence; 2. Prosecutorial misconduct under <u>Napue v. Illinois</u>, 360 U.S. 264 (1959); 3. Ineffective assistance of trial counsel for: a. Failing to proffer the testimony of the off-the-record bench conferences concerning the State's chief witness' aggravated kidnapping warrant, believed to be relevant and material to his defense; b. Failing to move to sever the trial with co-defendant (Brian Massey); c. Failing to move for a mistrial when a State witness, Gerald Barker, was not called to testify; d. Failing to sufficiently move for a motion to suppress the jailhouse phone conversation; e. Failing to file an objection to the jailhouse phone conversation under the Louisiana Electronic Surveillance Act; f. Failing to be present at the sentencing hearing; and g. Failing to file any motions prior to the sentencing hearing; and 4. Ineffective assistance of appellate counsel for failing to raise the aforementioned ineffective assistance of trial counsel claims on direct appeal.

supplemental application raising six additional claims.[8]  The state district court denied relief on

May 28, 2014 and the Louisiana Fifth Circuit Court of Appeal followed suit on July 18, 2014.[9]

What happened next is unclear.  What this Court can say for certain is that Massey filed at

least one writ entitled "supplement claims to initial application for post-conviction relief" with the

Louisiana Supreme Court.[10]  On its own, this writ would be a problem for Massey because he

failed to include many of his claims of ineffective assistance of counsel which would result in his

federal application being a mixed petition containing both exhausted and unexhausted claims.[11]

However, Massey has also attached an initial writ application to his habeas petition, which raises

seven additional claims, including the seven missing ineffective assistance of trial and appellate

counsel claims that he raised in his initial application for post-conviction relief.[12]  The problem is

that this "initial writ application" cannot be found in the State record nor the Louisiana Supreme

Court's file; however, this Court will, nevertheless, give Massey the benefit of the doubt and

---

[8] State Rec., Vol. 2 of 11, (Supplemental Application for Post-Conviction Relief).  The six supplemental claims were: 1. Appellate counsel was ineffective for failing to challenge the court's rulings regarding: a. The motion to view the crime scene; b. The motion for a Daubert hearing on the State's ballistics/tool mark evidence; c. The State's motion to seal its witness list; and d. The motion in limine to exclude an "SKS assault rifle, seven ounces of cocaine and a Romania[n] M56 7.62"; 2. "The trial court violated petitioner's right to due process, to confront and cross-examine witnesses, present a defense and a fair trial when it denied his motion to view the scene"; 3. "The trial court violated petitioner's right to due process and a fair trial when it allowed expert testimony on firearm examination and tool mark identification without determining whether the testimony was reliable"; 4. "The trial court violated petitioner's constitutional right to due process, confrontation and a fair trial when it ex parte granted [the] State's motion to seal witness list [sic]"; 5. "The trial court denied petitioner's right to due process and a fair trial when it denied his motion in limine and erroneously admitted evidence with no relationship to the charged crime"; and 6. Ineffective assistance of trial counsel for failing to call Gerald Barker as a defense witness.

[9] State Rec., Vol. 3 of 11, Order dated May 28, 2014; Massey v. Cain, No. 14-KH-480 (La. App. 5th Cir. July 18, 2014); State Rec., Vol. 3 of 11; Rec. Doc. No. 1, p. 20.

[10] State Rec., Vol. 11 of 11.  This writ application appears in both the state court record and the Louisiana Supreme Court's file.

[11] "A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice."  Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998); accord Rose v. Lundy, 455 U.S. 509, 522 (1982) ("[B]ecause a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims.").

[12] Rec. Doc. 4-4, pp. 33-34.

assume that it is authentic because the only writ application that does appear in the record is a supplement.[13]  The Louisiana Supreme Court denied Massey's writs on July 31, 2015 without explanation.[14]

On or about August 20, 2015, Massey filed the instant federal application seeking *habeas corpus* relief.[15]  In his federal application, petitioner asserts the following claims:

1.   The state engaged in purposeful racial discrimination in its use of peremptory strikes of prospective jurors in violation of Batson v. Kentucky, 476 U.S. 79 (1986);[16]

2.   The trial court's denial of a motion to sever violated petitioner's right to a fair trial;[17]

3.   The evidence was insufficient to support petitioner's conviction;[18]

4.   Petitioner's trial counsel was ineffective for failing to:

   a.   "proffer the testimony of the off-the-record bench conferences concerning the State's chief witness' aggravated kidnapping warrant, believed to be relevant and material to the defense";
   b.   "move to sever trial with co-defendant (Brian Massey)";
   c.   "move for a mistrial when a state witness, Gerald Barker, was not called to testify, which was a travesty to his defendant's case";
   d.   "sufficiently move for a motion to suppress the (jailhouse) phone conversation;
   e.   "file an objection to the (jailhouse) phone conversation under the La. Electronic Surveillance Act, LSA-R.S. 15:1301, *et seq.*";
   f.   "be present at sentencing hearing"; and
   g.   "file any motions prior to sentencing hearing."[19]

---

[13] State Rec. Vol. 11 of 11
[14] State *ex rel.* Massey v. State, 174 So.3d 1142 (La. 2015); State Rec., Vol. 3 of 11.
[15] Rec. Doc. 4.
[16] Rec. Doc. 4-1, pp. 15-20.
[17] Id. at pp. 20-24.
[18] Id. at pp. 24-31.
[19] Id. at pp. 31-38.

5.      Petitioner's appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on direct appeal.[20]

The state has filed a response conceding that the application is timely but arguing that petitioner has not exhausted his state court remedies.[21]  Specifically, the State claims that Massey has failed to exhaust all of his claims of ineffective assistance of counsel, with the sole exception of his claim that "counsel was ineffective for failing to call Gerald Barker as a defense witness."[22]  The State would be correct if this Court were only to consider the supplemental writ application filed under Louisiana Supreme Court Case No. 2014-KH-1674.  However, as discussed above, this Court will assume that Massey also filed the initial application that he attaches to this petition.  Accordingly, this Court will treat Massey's claims as exhausted and address each claim on the merits.

## II.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

---

[20] <u>Id</u>. at pp. 32-33.
[21] Rec. Doc. 15.
[22] <u>Id</u>.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "*was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.*"  28 U.S.C. § 2254(d)(1) (emphasis added).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; *it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.* AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted) (emphasis added).

Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted) (emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White, 134 S. Ct. at 1701.

## III.   ANALYSIS

### 1.   Batson

In his first claim, Massey alleges that the State intentionally used its peremptory strikes to exclude black jurors in violation of Batson, 476 U.S. 79.[23] Specifically, Massey alleges that the State's use of a back-strike to remove juror Michael Kellup was based on the fact that he is black.[24]

---

[23] Rec. Doc. 1, pp. 15-20.
[24] Id. at 16.

On appeal, the Louisiana Fifth Circuit Court of Appeal denied Massey's claim because there was no inherent discriminatory intent in the prosecutor's explanation for why he struck Mr. Kellup.[25]

The court explained:

> As previously discussed, the State elected to use its tenth peremptory challenge to backstrike Kellup after the eleventh juror had been selected, but before the twelfth juror, a black female, had been accepted from the fourth jury venire. The defense raised its <u>Batson</u> challenge asserting that because the State had previously found Kellup acceptable, in addition to the fact that the trial court had found a <u>Batson</u> pattern in the first attempted trial, the backstrike was necessarily for racial discriminatory reasons. *The trial court explicitly determined that no pattern existed but allowed the State to present its race-neutral reasons in light of the fact of the pattern found in the previously attempted trial.* After the State noted that it had inadvertently overlooked a note regarding its intention on challenging Kellup for cause based on Kellup's child support case and assertion of unfair treatment by the State, the trial court denied defendant's <u>Batson</u> challenge.
>
> Although the trial court found that the defendant had not met his initial burden of establishing a prima facie case of purposeful discrimination, it allowed the State to present its race-neutral reasons. And because the State offered a race-neutral explanation and the trial court ruled on the ultimate question of intentional discrimination, rendering the preliminary issue of whether the defendant made a prima facie showing moot, the focus of the inquiry here shifts to whether the State offered a constitutionally acceptable race-neutral reason for the peremptory challenge of Kellup. See <u>Green</u>, *supra.*
>
> Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered is deemed race-neutral. <u>Purkett</u>, *supra.* In the instant case, we find that the State's explanation is based on something other than Kellup's race, namely, his bias against the State attributable to his unfair treatment during a child support proceeding which resulted in his arrest.
>
> The purpose of voir dire examination is to develop the prospective juror's state of mind not only to enable the trial judge to determine actual bias, but to enable counsel to exercise his intuitive judgment concerning the prospective jurors' possible bias or prejudice. <u>Trahan v. Odell Vinson Oil Field Contractors, Inc.</u>, 295 So.2d 224, 227 (La.App. 3 Cir.1974). As stated in <u>United States v. Mutchler</u>, 559 F.2d 955 (5th Cir. 1977), allowing "peremptory challenges represent an assumption in our adversary system that a party and his advocate can frequently discern bias in a prospective juror that cannot be extracted from his mouth in so many words." Here, the race-neutral reason offered by the State was Kellup's potential bias based on his previous arrest and treatment during a child support case in which he was

---

[25] <u>Massey</u>, 91 So. 3d at 471.

put in jail by the judge.  Specifically, during voir dire, Kellup was questioned regarding his arrest to which he responded:

> Yeah. I've been arrested for child support a few times. I don't think I was treated fairly in one of the cases because I had just gotten a job, and they sent me a subpoena to go to court, and I told the Judge as soon as I make my first payday, I will give you something. They still locked me up. I don't think that was fair.

The trial court noted that its record also reflected that Kellup was arrested for failing to pay child support, and believed he was not treated fairly by the State. Thus, we find the trial court did not abuse its discretion in determining that the State had offered a non-discriminatory race-neutral reason for striking Kellup.

Additionally, as correctly noted by the State in its brief, Louisiana jurisprudence has recognized child support issues as a basis for bias and a suitable race-neutral explanation in support of peremptory challenges.  (See State v. Jones, 41,449 (La.App. 2 Cir. 9/20/06), 940 So.2d 61, 77-78; State v. Dobbins, 28,975 (La.App. 2 Cir. 12/11/96), 685 So.2d 446).

Moreover, although the defendant argues that during voir dire Kellup stated that he could follow the law despite the child support matter, the jurisprudence is well established that mere reliance on a prospective juror's assertion that he or she will be fair and impartial despite such bias is not binding on the court.  State v. Lewis, 391 So.2d 1156 (La. 1980); State v. Freeze, 438 So.2d 1340 (La.App. 3 Cir. 1983), writ denied, 466 So.2d 465 (La. 1985); State v. Sylvester, 400 So.2d 640 (La. 1981).  Additionally, if the revealed details of the relationship are such that bias or prejudice may be reasonably implied, a juror may be properly refused for cause.  Freeze, supra; Lewis, supra; State v. Monroe, 366 So.2d 1345 (La. 1978), cert denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983).

In the present matter, the State had intended to challenge Kellup for cause based on the referenced bias however, the State had overlooked its notes and sought to correct its mistake by exercising a peremptory challenge after the noted bias was realized.  And to further substantiate the State's position, the trial court also stated that its notes reflected that Kellup believed he was treated unfairly by the State in his child support case.  Therefore, the trial court obviously made an implicit finding that despite his assertion that nothing would affect his judgment in the case, the pending child support case posed a sufficient threat to his objectivity to support the peremptory challenge.  Finally, the trial court noted for the record that four black jurors had already been accepted to serve on the jury in this case.

Thus, based on the record, we find the trial court did not abuse its great discretion in finding that the State provided race-neutral explanations for its peremptory challenge of Kellup.  The record reflects that the trial court's notes reflected the same concerns as the State's regarding Kellup's bias given his previous issues with his child support case, and that the trial court carefully considered the responses of both the State and the defense prior to making its ruling.

> In view of the vast amount of discretion to be accorded to the findings of the trial court in assessing intent and judging credibility of prospective jurors, we find that the trial court did not err in accepting the reasons given by the State as being race-neutral and without discriminatory intent.

Massey, 91 So. 3d at 470-72.

A State violates a defendant's rights if it uses peremptory challenges to strike prospective jurors solely on the basis of race. Batson, 476 U.S. at 86. The United States Supreme Court defined the appropriate analysis to be used in addressing a Batson challenge as follows:

> A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id., at 97-98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; Miller-El v. Dretke, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-2332, 162 L.Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834.

Rice v. Collins, 546 U.S. 333, 338 (2006).

For purposes of habeas review, "[a] state trial court's finding of the absence of discriminatory intent is 'a pure issue of fact' that is accorded great deference and will not be overturned unless clearly erroneous." Murphy v. Dretke, 416 F.3d 427, 432 (5th Cir. 2005) (quoting Hernandez v. New York, 500 U.S. 352, 364-65 (1991)). In a habeas proceeding the role of the federal court on appeal is to "determine whether the trial court's determination of the

prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." Miller–El v. Cockrell, 537 U.S. 322, 341 (2003).

The Supreme Court has also noted that during jury selection the entire res gestae takes place in front of the trial judge, leaving the judge well situated to detect the true purpose of the peremptory challenge. United States v. Armstrong, 517 U.S. 456, 468 (1996). The Fifth Circuit has held that the reasoning may be "stronger if the attorney is able to articulate an objective fact, such as that the juror was slow in answering questions or had to have questions repeated." United States v. Bentley-Smith, 2 F.3d 1368, 1375 (5th Cir. 1993). A "judge is free, based upon all the information presented and that judge's eyewitness observation of counsel, to conclude that the reason is offered in good faith and not as a subterfuge for race." Id.

In this case, because the judge asked the State to give race neutral reasons for striking Juror Kellup, we are concerned only with the third-step of the Batson analysis. Massey contends that the State improperly struck Juror Kellup on the basis that he was black. The State offered the following reasons race-neutral reason for using a back-strike on Kellup: Kellup was incarcerated in Orleans Parish after failing to pay his child support.[26] Notably, Mr. Kellup was the only juror on the panel who said that he felt he was treated unfairly by the police, despite several other jurors recounting their own run ins with the law.[27]

Thus, Massey cannot show by clear and convincing evidence that the trial court's determination that the prosecutor lacked discriminatory intent was objectively unreasonable. The record clearly shows that the prosecutor articulated a valid race neutral reason for removing Mr.

---

[26] Rec. Doc. 4-4, Exh. I (2)-3, Massey Voir Dire, 8/26/10, p. 146.
[27] Rec. Doc. 4-4, Exh. I-3, Massey Voir Dire, 8/25/10, p. 259.

Kellup from the jury – bias against the State for being jailed after failing to pay child support.  In addition to proffering a race-neutral reason for striking Mr. Kellup, the prosecutor also had an explanation for why he used a back-strike instead of striking Mr. Kellup outright the first time. The prosecutor explained: "Well, Judge, it was on my sheet to challenge for cause.  And he would have been challenged for cause and he would have been challenged for cause had we [not] overlooked[ed] that issue.  And when we went and sat down, that's when we realized that we had overlooked that issue in terms of the – I mean, he indicated it on the record."[28]  Simply put, Massey has failed to provide clear and convincing evidence to rebut the presumption that the reasons for striking Kellup were not pretextual.  Thus, his claim should be denied.

### 2. <u>Denial of the Motion to Sever</u>

In his second claim, Massey alleges that the trial court violated his Sixth Amendment right to confront his accusers when it denied his motion to sever his trial from his co-defendant and brother, Brian Massey.[29]  Specifically, Massey argues that pursuant to <u>Bruton v. United States</u>, 391 U.S. 123 (1968) he was entitled to a severance because the State admitted an inculpatory statement by his brother, who did not testify during the trial.[30]  The statement that Massey complains of is a jail phone call by Brain Massey to their father.  The relevant portion of that call reads:

> Tell, Woe, call Dool (phonetic) right now, fool.  You heard me?  He saying, Dool wanted.  You heard me?  So he like, you know, Dool running from the police right now.  Tell him to tell Dool I don't need him to talk to no motherfucker police. I need him to talk to my lawyer.  You know what I'm saying?  Are you listening to me?
> Yeah.  I'm listening to you.

---

[28] Rec. Doc. 4-4, Exh. I (2) - 3 Massey Voir Dire, 8/26/10, p. 146.
[29] Rec. Doc. 1, p. 20.
[30] <u>Id</u>.

Tell him I need him to talk to my lawyer.  Ain't no motherfucking police is going to be around.  We don't deal with the police.  You know what I'm saying?

Yeah.

I need him to meet my lawyer somewhere, and let my lawyer record him on the tape saying that it wasn't me and Brad, [Eric Massey], who did that shit.  Because he made a statement and he made the statement saying that he could identify the people – he can't identify the people who did it.  But he said that he saw who did it, but he can't identify them.  He can identify me and Brad because he know us.  You feel me.

Right.

So all he got to do is let my lawyer record him on a tape saying that it wasn't Brad [Eric Massey] and Brian who did that, and they going to drop the fucking charges.

For real?

Tell that nigger I got $5 for him.  You heard me?  So take care of that.

I'm going that way right now.  I'm on it right now, Son.

You heard me?  Track Woe down, tell Woe everything that I'm telling you, and let Woe know ain't no motherfucking police is involved, fool.  We don't deal with the police.  Tell him he going to meet my lawyer and he going to meet a private investigator somewhere.  Wherever he want to meet at, he is going to meet the private investigator where ever he want to meet him at, and let them record him saying what I just told you he would have to say.

Right.

Tell that nigger I got $500 and all for him just saying that, fool.

All right.

State Rec., Vol. 8 of 11, trial transcript 8/30/2010, pp. 1343-1346.  Specifically, Massey contends

that the statement is inculpatory because it was an admission that he and his brother committed the

murders.[31]  On appeal, the Louisiana Fifth Circuit denied Massey's claim because it determined

that the statements Brian Massey made to his father were not inculpatory and thus did not implicate

Massey's confrontation rights under <u>Bruton</u>.[32]  The court further found that even if Massey did

have a right to confront his brother the admission of the jail phone call was harmless error.[33]

---

[31] <u>Id</u>. at p. 23.
[32] <u>Massey</u>, 91 So. 3d at 479.
[33] <u>Id</u>. at 480.

In Bruton v. United States, the United States Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.  Confrontation Clause violations are subject to the harmless error analysis.  Horn v. Quarterman, 508 F.3d 306, 322 n. 24 (5th Cir. 2007).  The United States Court of Appeals for the Fifth Circuit has held that in cases governed by the AEDPA, federal habeas courts should continue to analyze the harmlessness of all state court decisions involving a constitutional "trial" error according to the standard articulated by the Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Robertson v. Cain, 324 F.3d 297, 304-07 (5th Cir. 2003).  Under Brecht, a federal court may grant habeas relief only if it determines that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  "The reviewing court must consider 'not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.'"  United States v. Lage, 183 F.3d 374, 388 (5th Cir.1999) (quoting Sullivan v. Louisiana, 508 U.S. 275, 279 (1993)); see also O'Neal v. McAninch, 513 U.S. 432, 435 (1995) (holding that in conducting a harmless error analysis, the court should examine whether the error affected the jury's verdict).  Thus, the inquiry is whether the prosecution can "show 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  Sullivan, 508 U.S. at 279 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

In analyzing whether a Confrontation Clause error is harmless, the reviewing court should consider, "the importance of the witness' testimony in the prosecution's case, whether the

testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case.  Delaware v. Van Arsdall, 475 U.S. 673 (1986).  When the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless.  O'Neal, 513 U.S. 432.

Here, Massey's claim fails because his brother's jailhouse call was clearly not inculpatory. Far from admitting guilt, the most plausible inference that can be drawn from the call was not that the brothers committed the murders, but rather, as the Louisiana Fifth Circuit Court of Appeal explained, that Brian Massey "was hoping to use the statement given by 'LA' to establish hi[s] and his brother's innocence."[34]   However, even assuming, *arguendo*, that Brian Massey's statement was inculpatory, Eric Massey is still not entitled to relief because the admission of the statements was clearly harmless.  As discussed in the following section, there was more than sufficient evidence for the jury to convict Massey without the statement.  The evidence established not only that Massey was seen at the scene of the crime but also that he was later found with a handgun that contained his DNA and matched a shell casing and bullet from the crime scene. Accordingly, it cannot be said that the admission of the jail phone call by Brain Massey had a substantial and injurious effect on the verdict, even if it was error, and thus Massey's claim should be denied.

---

[34] Massey, 91 So. 3d at 478.

### 3.   Sufficiency of the Evidence

Massey's next claim is that there was insufficient evidence to support his conviction.[35]  The core of Massey's claim is that his conviction was based on four fundamentally flawed pieces of evidence:  (1) a jailhouse statement of the co-defendant, Brian Massey, which the jury should never have been allowed to hear; (2) an illegally seized gun; (3) erroneous DNA evidence linking Massey to the gun; and (4) the unreliable testimony of Courtney Washington.[36]   On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied this sufficiency-of-the-evidence claim, explaining:

> The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  Id., 443 U.S. at 319, 99 S.Ct. 2781; See also State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Holmes, 98-490, p. 3 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.

> Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience.  State v. Williams, 05-59, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, LSA-R.S. 15:438 provides that "'assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.'"  State v. Wooten, 99-181, p. 4 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La. 1/14/00), 753 So.2d 208.  This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt.  Id.  All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Wooten, 99-181 at 4-5, 738 So.2d at 675.

> Here, defendant was charged with second degree murder. Second degree murder is defined as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1.

---

[35] Rec. Doc. 1, p. 24.
[36] Id. at p. 25.

Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Gant, 06-232, p. 8 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1111, writ denied, 06-2529 (La. 5/4/07), 956 So.2d 599; State v. Spears, 05–0964 (La. 4/4/06), 929 So.2d 1219, 1224. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Id. The act of aiming a lethal weapon and discharging it in the victim's direction supports a finding by the trier of fact that the defendant acted with specific intent to kill. Id. In addition, flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. Id.

Regardless of whether defendant fired the fatal shots, the evidence may be sufficient to prove he was at least a principal to second degree murder. Principals are defined as "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." LSA-R.S. 14:24. See also State v. Anderson, 97-1301, p. 3 (La. 2/6/98), 707 So.2d 1223, 1224 (per curiam). Only those persons who "knowingly participate in the planning or execution of a crime" are principals to that crime. State v. Pierre, 93-0893, p. 4 (La. 2/3/94), 631 So.2d 427, 428 (per curiam). Mere presence at the scene of a crime does not make one a principal to the crime. Id. A person may be convicted of an offense even if he has not personally fired the fatal shot. The Law of Principals states that all persons involved in the commission of a crime, whether present or absent, are equally culpable. State v. Schwander, 345 So.2d 1173, 1174-75 (La. 1977). Whether a defendant actually fires the bullet that strikes and kills a victim is of no consequence and the defendant may be convicted as a principal to the crime. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, 02-3090 (La. 11/14/03), 858 So.2d 422; see also State v. Hampton, 98-331, p. 13 (La. 4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). However, a principal may be connected only to those crimes for which he has the requisite mental state. State v. Holmes, 388 So.2d 722 (La.1980); State v. McAllister, 366 So.2d 1340 (La. 1978).

In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the defendant's identity as the perpetrator. State v. Draughn, 05-1825, p. 8 (La.1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). "'As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime

was committed, the [s]tate is required to negate any reasonable probability of misidentification.'" Id., (quoting State v. Neal, 00–0674, p. 11 (La. 6/29/01), 796 So.2d 649, 658, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)). Positive identification by one witness is sufficient to support a conviction. State v. Harris, 07-124, p. 4 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193.

The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and credibility will not be reweighed on appeal. State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. A reviewing court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Harris, 02-1589, p. 4 (La. 5/20/03), 846 So.2d 709, 713 (citing State v. Mussall, 523 So.2d 1305, 1310 (La. 1988)). By returning a guilty verdict, the jury obviously believed the testimony of the State's witnesses, including their experts, over that of the defense's witnesses.

Courtney Washington, an eyewitness, testified that she had seen the defendant and his brother, Brian Massey, in a white truck, driving slowly through the neighborhood shortly before the shooting. Additionally, Washington testified that she was standing on the steps leading up to her trailer when she heard gunshots and turned around and again saw the white truck in the middle of the street with the defendant, and his brother, Brian Massey, standing by the victim. And although Washington testified that she only saw Brian Massey shoot at the victim, she testified that she could not state who had fired the four other shots prior to her turning around. Additionally, Washington testified that she observed Brian Massey holding a weapon she described as "[a] big one, like a long one. Probably a little longer than my arm," and the defendant holding "a small one." And although defendant contends that it is impossible for Washington to have observed such events due to the distance at which Washington was standing, the evidence recovered at the scene, in addition to other witness testimony presented by the State at trial, is consistent with her testimony.

First, Sergeant McGuffie testified that during her surveillance of 2120 Constantine, known to be Brian Massey's residence, and where both Brian Massey and the defendant were seen leaving on the day of their arrest, she took a photograph of a white SUV parked in front of the residence. The description of the white SUV matches the description of the vehicle provided by Washington that was driven by Brian Massey, with the defendant in the passenger seat, on the evening of the murder.

Second, around the vicinity of the victim's body, multiple 7.62 caliber shell casings, and one 9 mm shell casing were recovered. Additionally, a loaded 9 mm pistol was retrieved from the vehicle seat pouch directly in front of where the defendant was seated at the time of his arrest. The 9 mm handgun found in the seat

pouch was proven to match the 9-millimeter casing found at the scene of the murder and the bullet retrieved from the victim's thigh. Finally, a DNA profile obtained from the swab of the slide of the 9 mm pistol was consistent with a mixture of DNA from at least two individuals. Specifically, the State's DNA expert testified that the defendant fell within the .1 percent of the Caucasian, African-American, Hispanic population that could not be excluded as a minor contributor to the DNA mixture.

In addition to the physical evidence presented by the State at trial, the State also offered a theory as to the motive behind the murder. It was established that two days prior to the murder a shooting occurred in which the defendant's cousin was shot. Additionally, prior to the murder, the defendant's brother Brian Massey had been shot in the foot. Brian Massey informed detectives that he believed a man by the name of Johnny Bush, either a cousin or brother of victim Harold Bush, had shot him.

Regardless of whether the defendant fired the shot that killed the victim, we find the defendant was at least a principal to the second degree murder of Harold Bush. Thus, when viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the defendant had the specific intent to kill Harold Bush beyond a reasonable doubt. Accordingly, we find that the evidence presented was sufficient to sustain defendant's conviction of second degree murder.

Massey, 91 So. 3d at 462-65.  The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[37]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless Massey shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that Massey has made no such showing.

---

[37] State ex rel. Massey, 98 So. 3d 332.

20

As correctly noted by the Louisiana Fifth Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

In the instant case, Massey's guilt was established at trial through, among other things, the eyewitness testimony of Courtney Washington, and it is clear that "the testimony of a *single*, *uncorroborated* eyewitness is generally sufficient to support a conviction."  United States v. King, 703 F.2d 119, 125 (5th Cir. 1983) (quotation marks omitted; emphasis added); accord Phillips v.

Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); McAfee v. Quarterman, Civ. Action No. G-07-0361, 2008 WL 4415225, at *19 n.3 (S.D. Tex. Sept. 23, 2008), aff'd sub nom. McAfee v. Thaler, 630 F.3d 383 (5th Cir. 2011).

Although petitioner now argues that Washington was not a credible witness, the fact remains that the jurors, as was their right, obviously chose to believe her.  Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).[38]

In summary, for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, it is clear that when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational.*  To the contrary, a review of the record establishes that there was more than sufficient proof to support the jury's verdict. Courtney

---

[38] The Court notes that Massey additionally contends that the State did not "conclusively establish[]" that the DNA linked him to the gun because he presented a competing expert witness.  However, again, Massey is attempting to have this Court impermissibly encroach on a matter which is within the province of the jury.  Clearly, it is for the jury "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  Thus, regardless of what this Court thinks of the conflicting expert witness testimony, it must "assume[] that the jury resolved all such matters in a manner which supports the verdict."  Morris v. Attorney Gen. of State of California, 36 Fed. App'x 235, 237-38 (9th Cir. 2002) (citation omitted).

Washington testified that Massey was near the victim at the time of the murder, carrying a 'small' weapon – presumably a handgun.  Later, when Massey was arrested, a 9MM handgun was found in the seat pouch directly in front him; furthermore, the pistol matched a shell casing found at the crime scene and the bullet that was recovered from the victim's leg.  Even if, on collateral review, this Court did not owe the deference to the verdict or the state court's determination of this issue under the AEDPA, the evidence sufficiently supports the verdict pursuant to <u>Jackson</u>.  Therefore, petitioner cannot show that – under the doubly deferential standard – the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, relief is not warranted.

### 4.  <u>Ineffective Assistance of Trial Counsel</u>

Next, Massey makes seven claims that his trial counsel was ineffective for failing to: (1) "proffer the testimony of the off-the-record bench conferences concerning the State's chief witness' aggravated kidnapping warrant, believed to be relevant and material to his defense"; (2) "move to sever [the] trial [from] his co-defendant (Brian Massey)"; (3) "move for a mistrial when a State witness, Gerald Barker, was not called to testify, which was a travesty to his defendant's [sic] case"; (4) "sufficiently move for a motion to suppress the (jailhouse) phone conversation"; (5) "file an objection to the (jailhouse) phone conversation under the La. Electronic Surveillance Act, LSA-R.S. 15:1301, *et seq*."; (6) "be present  at [the] sentencing hearing", and (7) "file any motions prior to [the] sentencing hearing."[39]  Massey raised these claims in state post-conviction

---

[39] Rec. Doc. 4.

proceedings and they were denied by the district Court in a written opinion.[40]  As discussed below, these claims have no merit.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  Id. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  See Montoya v. Johnson, 226 F.3d 399, 408 (5th Cir. 2000); Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  See Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F .3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88; see also Cantu v. Thaler, 632 F.3d 157, 163 (5th Cir. 2011).  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  See Strickland, 466 U.S. at 689; Carty v. Thaler, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"

---

[40] State Rec., Vol. 3 of 11, Order dated May 28, 2014.

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Harrington v. Richter, 131 S.Ct. 770, 787 (2011) (citing Strickland, 466 U.S. at 689).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694; see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 695).  In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome."  Cullen, 131 S.Ct. at 1403 (quoting Strickland, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  Harrington, 131 S.Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common

25

custom." <u>Harrington</u>, 131 S.Ct. at 788.  The <u>Harrington</u> Court went on to recognize the high level

of deference owed to a state court's findings under <u>Strickland</u> in light of AEDPA standards of

review:

> The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so.  The <u>Strickland</u> standard is a
> general one, so the range of reasonable applications is substantial. Federal habeas
> courts must guard against the danger of equating unreasonableness under <u>Strickland</u>
> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is
> not whether counsel's actions were reasonable.  The question is whether there is
> any reasonable argument that counsel satisfied Strickland's deferential standard.

<u>Id</u>. at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."  <u>Cullen</u>,

131 S.Ct. at 1403 (quoting <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1413 (2009)).  The federal

courts must take a "highly deferential" look at counsel's performance under the <u>Strickland</u> standard

through the "deferential lens of § 2254(d)."  <u>Id</u>. (citing <u>Strickland</u>, 466 U.S. at 689 and quoting

<u>Knowles</u>, 129 S.Ct. at 1419 n. 2).  Furthermore, the court will "indulge a strong presumption that

strategic or tactical decisions made after an adequate investigation fall within the wide range of

objectively reasonable professional assistance."  <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir.

1999) (citing <u>Strickland</u>, 466 U.S. at 689-90); <u>see also</u> <u>Matheson v. King</u>, 751 F.2d 1432, 1441

(5th Cir. 1985).

The <u>Strickland</u> standard also applies to claims of ineffective assistance of appellate counsel.

<u>Duhmel v. Collins</u>. 955 F.2d 962, 967 (5th Cir. 1992) (citing <u>Heath v. Jones</u>, 941 F.2d 1126, 1130

(11th Cir. 1991)).  In reviewing claims of ineffective assistance of appellate counsel, the Supreme

Court of the United States has expressly observed that appellate counsel "need not advance every

argument, regardless of merit, urged by the [] defendant.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394

(1985).  When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." Duhmel, 955 F.2d at 967.  However, failing to raise every meritorious claim on appeal does not make counsel deficient.  Green v. Johnson, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989)).  Similarly, failing to raise a frivolous claim does not cause counsel's performance to fall below an objective level of reasonableness.  Courts give great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues." Jones v. Barnes, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  Id. at 751–2.  Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).

### i.   Failure to proffer off-the-record bench conferences

In his first claim of ineffective assistance of counsel, Massey contends that his lawyer's performance was deficient because he failed to "proffer the testimony believed to be relevant and material to his defense."[41]  Specifically, Massey claims that counsel should have proffered that the State agreed to drop an aggravated kidnapping charge against its only eyewitness, Courtney Washington, in exchange for her testimony.[42]  In the last reasoned state court opinion, the trial court denied Massey's claim on post-conviction because he "fail[ed] to establish that any deal was

---

[41] Rec. Doc. 1, p. 33.
[42] Id. at pp. 33-34.

made between the witness and the State at the time of her testimony."[43]  For the reasons discussed below, Massey's claim is without merit.

To begin with, Massey has failed to demonstrate that there was ever any deal given to Courtney Washington in exchange for her testimony.  To the contrary, on August 23, 2010, the state swore on the record that Ms. Washington was not coerced or given any rewards or offers to testify, which the trial court found to be credible.[44]  Furthermore, Massey has failed to establish that there was even an off-the-record conversations concerning Courtney Washington's testimony at all.  Massey has not introduced any evidence, such as affidavits from counsel, that an off-the-record conversation even took place, let alone what the content of that conversation was.  Without such evidence, he has not shown that counsel performed deficiently for failing to make a proffer and thus his claim should be denied.

### ii.  Failure to Move for a Severance

Massey's next claim of ineffective assistance of counsel is that his lawyer "failed to move to sever trial [sic] with co-defendant (Brian Massey)."  This claim is wholly without merit.  Contrary to Massey's claim, trial counsel did, in fact, move to sever the trial several times pursuant to Bruton and Crawford.  The transcript reads:

> Mr. Riehlmann:
> Just to the extent that I have to preserve this issue on the record, *I move for a severance because I believe this to be a Bruton/Crawford proper* [sic].
>
> Mr. Clauss:
> This issue has already been resolved, Judge.  I mean, he is just doing it for record purposes.
>
> The Court:

---

[43] State Rec., Vol. 3 of 11, Order dated May 28, 2014.
[44] State Rec., Vol. 6 of 11, Transcript dated August 23, 2010, p. 15.

And we did have hearings on this previously, and that request is denied.

State Rec., Vol. 8 of 11, p. 1341 (emphasis added).  Accordingly this claim is frivolous and should be denied.

### iii.  Failure to Move for a Mistrial When State's Witness Gerald Barker was not Called to Testify

Massey also contends that his lawyer was ineffective for failing to "move for a mistrial when a State witness, Gerald Barker, was not called to testify, which was a travesty to his [sic] defendant's case."[45]  Massey does not elaborate on why Gerald Barker was essential to his defense, nor does he cite any legal authority for the proposition that a mistrial is warranted when the State elects not to call one of its own witnesses.  On post-conviction, the trial court denied Massey's claim because he failed to prove that trial counsel's performance was deficient and that he was prejudiced by counsel's decision not to move for a mistrial.[46]

Regarding mistrials, Louisiana law provides:

A mistrial may be ordered, and in a jury case the jury dismissed, when:

(1) The defendant consents thereto;

(2) The jury is unable to agree upon a verdict;

(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;

(4) The court finds that the defendant does not have the mental capacity to proceed;

(5) It is physically impossible to proceed with the trial in conformity with law; or

---

[45] Rec. Doc. 4, p. 32.
[46] State Rec., Vol. 3 of 11, Order dated May 28, 2014.

(6) False statements of a juror on voir dire prevent a fair trial.

Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

La. Code Crim. Proc. art. 775.

Clearly, none of the factors under article 775 applied to the State's decision not to call Gerald Barker as a witness and counsel was under no professional obligation to pursue a meritless request for a mistrial. See Smith v. Puckett, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); see also Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"); see also Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)). Thus, relief on this claim was properly denied by the state courts.

### iv.   Motion to Suppress the jailhouse phone conversation

In his next claim, Massey complains that his lawyer rendered ineffective assistance of counsel for failing to suppress the jail calls, presumably pursuant to the Fourth Amendment.[47] "Where defense counsel's failure to litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious

---

[47] Rec. Doc. 4, p. 32.

30

and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see also Chavez v. Dretke, No. 3-03-CV-0229-P, 2004 WL 2360026 at *4 (N.D. Tex. Oct.19, 2004), rec. adopted, (N.D. Tex. Nov. 22, 2004). Petitioner has failed to meet that heavy burden.

In the landmark case of Katz v. United States, 389 U.S. 347 (1967), the U.S. Supreme Court recognized that individuals generally have a reasonable expectation of privacy in a telephone conversation, and that such conversations are protected under the Fourth Amendment.  To prevail on a motion to suppress a defendant must establish that he had reasonable expectation of privacy from both an objective and subjective standpoint.  Kyllo v. United States, 533 U.S. 27, 33 (2000). An objectively reasonable expectation of privacy "is one that society is prepared to recognize as reasonable."  See Bond v. United States, 529 U.S. 334, 338 (2000).

Here, Massey has failed to establish an objectively reasonable expectation of privacy. Courts have consistently held that detainees lack an objectively reasonable expectation of privacy in phone calls made from prisons or jails.  See, e.g., United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir. 1996) (holding that "any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls."); United States v. Sababu, 891 F.2d 1308, 1329 (7th Cir. 1989) (holding that phone calls made from a jail were not protected by the Fourth Amendment); United States v. Rushwam, 275 Fed. App'x 684, 685 (9th Cir. Apr. 28, 2008) (holding that defendant "had no reasonable expectation of privacy in outbound calls he made from jail"); Bradley v. Mason, 833 F.Supp.2d 763 (N.D. Ohio 2011) ("In this case, society does not acknowledge that a prisoner has

a reasonable expectation of privacy in telephone calls made from within the jail to individuals other than his attorney"); United States v. Harrison, 986 F.Supp. 280 (M.D. Pa. 1997) ("Courts have been consistent in holding that an inmate does not have an objectively reasonable privacy interest in outbound telephone calls.").

Clearly any motion to suppress the jail phone calls would have been meritless. Accordingly, trial counsel cannot be faulted for not moving to suppress the calls because any such motion would have been futile. Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("counsel is not required to engage in the filing of futile motions"). There is simply no reasonable probability that the evidence would have been suppressed and a different verdict would have resulted even if counsel had challenged the search warrant, and, therefore, no prejudice resulted from his failure to do so. See, e.g., Walker v. Thaler, No. 3-11-CV-1055, 2012 WL 7749068, at *4 (N.D. Tex. May 9, 2012) ("Because there is no evidence of an underlying Fourth Amendment violation, counsel was not ineffective for failing to file a motion to suppress."), adopted, 2013 WL 1091238 (N.D. Tex. Mar. 15, 2013) ("The magistrate judge concluded, and the court agrees, that [petitioner] failed to meet his heavy burden of establishing that his Fourth Amendment claim is meritorious, and that there is a reasonable probability that the verdict would have been different had the complained of evidence been excluded"). Thus, this claim too is without merit.

### v. Failure to Object to the Jailhouse Phone Conversations Under the Louisiana Electronic Surveillance Act

Massey also complains that trial counsel was ineffective for failing to object to the jailhouse phone calls under the Louisiana Electronic Surveillance Act, La.R.S. 15:1308, *et. seq.*[48]

---

[48] Rec. Doc. 4, p. 32.

However, Massey fails to explain how the jailhouse phone conversation violated the Louisiana Electronic Surveillance Act or point to any evidence in the record to support this claim.  On post-conviction, the state trial court denied Massey's claim for his failure to "present any law or any argument of specific allegations regarding this claim."[49]  As discussed below, the trial court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law and Massey's claim should be denied.

The Louisiana Electronic Surveillance Act generally prohibits a person from "willfully intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor[ing] to intercept, any wire or oral communication."  La. Rev. Stat. § 15:1303.  However, the act also provides an exception when "one of the parties to the communication has given prior consent to such interception."  Id.

Here, the record does not indicate whether Brian Massey or his father consented to the call being recorded, and Massey has failed to introduce any additional evidence, such as affidavits from his brother and father that they were unaware the call was being recorded.  Accordingly, Massey has not satisfied his burden to prove that his counsel's performance was deficient for failing to make the call because he has not shown that a challenge to the recording under the Louisiana Electronic Surveillance Act would have succeeded.  United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1990) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the

---

[49] State Rec., Vol. 3 of 11, Order dated May 28, 2014.

issue."); <u>Sones v. Hargett</u>, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point").  Thus, Massey's claim should be denied.

### vi.  Failure to be Present at Sentencing

Massey also claims that his trial counsel was ineffective because he failed to appear at Massey's sentencing.[50]  Massey acknowledges that he was given stand-in counsel but complains "stand-in counsel failed to file any motions or lodge necessary objections as he was unprepared to assist the Petitioner."[51]  The state courts denied Massey's claim without explanation.[52]

Courts have routinely held that absence of trial counsel at critical stages, such as sentencing, does not, by itself, amount to ineffective assistance of counsel.  <u>Vallance v. Vasbinder</u>, No. 06-CV-15083, 2009 WL 2705820, at *11-12 (E.D. Mich. Aug. 25, 2009) (holding that the use of stand-in counsel during the reading of the verdict –  a critical, yet "mostly ministerial" stage in the proceeding – did not amount to ineffective assistance of counsel); <u>Hannah v. Bock</u>, 447 F. Supp. 2d 798, 813 (E.D. Mich. 2006) (finding that the use of substitute counsel at sentencing did not create any prejudice); <u>Mallet v. Miller</u>, 432 F. Supp. 2d 366, 385-86 (S.D.N.Y. 2006) (finding the use of a substitute attorney at sentencing did not give rise to a claim of ineffective assistance of counsel); <u>Davis v. Kelly</u>, 2000 U.S. Dist. LEXIS 10959, at *66-67 (S.D.N.Y. Aug. 2, 2000) (counsel's failure to appear at fourteen out of eighteen calendar calls did not constitute ineffective assistance, where petitioner failed to point to any specific act counsel should have performed to prepare the defense better, and no prejudice resulted).

---

[50] Rec. Doc. 4, p. 34.

[51] <u>Id</u>.

[52] The last reasoned state court opinion did not specifically address Massey's claim that trial counsel was ineffective for failing to appear at sentencing.  <u>See</u> State Rec., Vol. 3 of 11 (trial court's post-conviction order).

Like in <u>Vallance</u>, stand-in counsel here played a ministerial role in Massey's sentencing because, as Massey admits, his attorney had already spoken with the State and announced that he made the strategic decision not to file any motions at sentencing.[53]   Thus Massey did not suffer any prejudice because once his attorney made the decision not to file any motions, there was nothing for Massey's stand-in counsel to do at the sentencing, which carried a mandatory life sentence.  La. Stat. Ann. § 14:30.1.  Accordingly, Massey's claim is without merit and should be denied.

### vii.   Failure to File a Motion for Post-Verdict Judgment of Acquittal

Massey alleges his trial counsel was ineffective for failing to file a post-verdict judgment of acquittal.[54]   Specifically, Massey claims that counsel should have based such motion "upon the statement of the States' key witness [who] stated in her testimony [that] she saw 'fire' coming from the weapon held by Brian Massey, but nothing from the gun of Eric."[55]   The trial court denied Massey's claim on collateral review because Massey failed to show "how any post-verdict motions would have affected his conviction."[56]   The trial court also noted that Massey's claim was "purely speculative and conclusory."[57]   For the following reasons Massey's claim should be denied.

Counsel's failure to file a post-trial motion challenging the legitimacy of the conviction did not constitute deficient performance, and Massey suffered no prejudice because counsel cannot be

---

[53] Rec. Doc. 4, p. 34.

[54] <u>Id</u>. at p. 34-5.  Massey also makes the claim that trial counsel was ineffective for failing to file any motions prior to sentencing, however, Massey fails to allege what other motions counsel should have filed and what effect they would have had on the proceeding.  The United States Fifth Circuit Court of Appeal has held that conclusory allegations, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  <u>Miller v. Johnson</u>, 200 F.3d 274, 282 (5th Cir. 2000) (citing <u>Ross v. Estelle</u>, 694 F.2d 1008, 1012 (5th Cir. 1983)).  Thus, Massey's bald allegation that trial counsel was ineffective for failing to file unspecified motions prior to sentencing is wholly conclusory and should be denied.

[55] <u>Id</u>.

[56] State Rec., Vol. 3 of 11 (trial court post-conviction order).

[57] <u>Id</u>.

considered ineffective for failing to file a meritless motion.  United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1990) ("Counsel is not required by the Sixth Amendment to file meritless motions."); see also Kimler, 167 F.3d at 893 ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

As previously discussed, there was clearly sufficient evidence to support the conviction, which rendered any motion for post-verdict judgment of acquittal meritless. Wiltz v. Louisiana, No. 04-30017, 1994 WL 286254, at *5 (5th Cir. June 22, 1994) (counsel is not ineffective for failing to file a post-verdict motion for judgment of acquittal as long as the evidence was sufficient to support the verdict); Page v. Rader, Civ. Action No. 10-1724, 2011 WL 1226477, at *6-7 (E.D. La. Mar. 14, 2011), adopted, 2011 WL 1213169 (E.D. La. Mar. 29, 2011); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *26 (E.D. La.2009), aff'd, No. 09-30807, 2011 WL 1792073 (5th Cir. May 11, 2011); Nicks v. Cain, Civ. Action No. 04-0519, 2005 WL 1578024, at *13 (E.D. La. June 30, 2005).  Thus, Massey cannot show that he suffered any prejudice as a result of counsel's decision not to file a post-verdict motion for judgment of acquittal and his claim should be denied.

### 5.   Ineffective Assistance of Appellate Counsel

Massey next claims that his appellate counsel was ineffective for failing to raise the foregoing ineffective assistance of trial counsel claims on appeal.  This claim fails for two reasons.

First, it must be noted that Louisiana law discourages the assertion of ineffective assistance of claims on direct appeal.  See, e.g., State v. Truitt, 500 So. 2d 355, 359 (La. 1987) ("The appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal.").  As a result, Louisiana state courts normally decline to consider such claims on direct appeal unless the record is sufficient to decide the issue without the need for an additional post-conviction hearing to obtain additional evidence.  See, e.g., State v. Ratcliff, 416 So. 2d 528, 530 (La. 1982).  Obviously, counsel does not perform deficiently in failing to conform to such state court norms where, as here, a client does not lose the opportunity to have his claim addressed later at a more appropriate time.

Moreover, even if any of these claims could have been appropriately brought on direct appeal, counsel was not obliged to do so.  On the contrary, it is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."  Id. at 753.  The applicable test to be applied in assessing such a claim is instead whether the issues ignored by appellate counsel were "clearly stronger" than the issues actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).

As already explained in detail in this opinion, Massey's claims that his trial counsel was ineffective have no merit.  Because those claims are meritless, they cannot be said to be "clearly stronger" than the claims appellate counsel asserted on appeal.  Therefore, petitioner's claim that his appellate counsel was ineffective must also fail.  For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Eric Massey be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of November, 2016.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

39